FILED

AUG 2 1 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  RANDY S. GROSSMAN
   United States Attorney
2  MELANIE K. PIERSON
   Assistant United States Attorney
3  California Bar No. 112520
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 546-7976
   Email: Melanie.Pierson@usdoj.gov
6
7  TODD KIM
   Assistant Attorney General
8  STEPHEN DA PONTE
   Senior Trial Attorney
9  Florida Bar No. 58454
   150 M Street, N.E.
10 Washington, D.C. 20002
   Telephone: (202) 305-2729
11 Email: Stephen.DaPonte@usdoj.gov

12 Attorneys for United States of America

13

14              UNITED STATES DISTRICT COURT

15            SOUTHERN DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,        Case No. __23-cr-01661-JO__

17            Plaintiff,
                                     PLEA AGREEMENT
      v.

18 ZEABORN SHIP MANAGEMENT
19 (SINGAPORE) PTE. LTD.,

20            Defendant.

21     IT IS HEREBY AGREED between Plaintiff, UNITED STATES OF AMERICA,

22 through its counsel, Randy S. Grossman, United States Attorney, Melanie

23 K. Pierson, Assistant United States Attorney, Todd Kim, Assistant

24 Attorney General, and Stephen Da Ponte, Senior Trial Attorney (the

25 "Government"), and Defendant ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE.

26 LTD., with the advice and consent of Joseph A. Walsh II, Esq., counsel

27 for Defendant, as follows:

28 //

Def. Initials 

# I

## THE PLEA

1.   Defendant agrees to waive Indictment and plead guilty to Counts 1 and 2 of an Information charging Defendant with:

### Count 1

On or about October 14, 2022, within the navigable waters, internal waters, and ports of the United States in the Southern District of California, ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD., Defendant, acting through its agents and employees, did knowingly fail to maintain an accurate Oil Record Book for the Star Maia. Specifically, Defendant ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. maintained and caused to be maintained an Oil Record Book that: (1) failed to record the discharges of oily bilge water from the Bilge Holding Tank and the Clean Bilge Tank into the ocean; and (2) erroneously recorded that oily bilge water had been discharged using the OWS when in fact the OWS had not been used; all in violation of Title 33, United States Code, Section 1908(a); Title 33, Code of Federal Regulations, Section 151.25; and Title 18 United States Code, Section 2.

### Count 2

On or about October 14, 2022, within the navigable waters, internal waters, and ports of the United States in the Southern District of California, ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD., Defendant, acting through its agents and employees, did knowingly fail to maintain an accurate Garbage Record Book for the Star Maia, that is, Defendant ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. maintained a Garbage Record Book that: 1) failed to record the burning of garbage in barrels on the vessel's deck while at sea; and 2) failed to record the disposal of burned garbage and barrels into the ocean; all in violation of Title 33, United States Code, Section 1908(a), and Title 33, Code of Federal Regulations, Section 151.55.

2.   Defendant shall be represented by an authorized representative and by counsel (counsel may be the authorized representative) and shall appear in open court and plead guilty to the two-count Information pending in this case. By entering into this agreement, Defendant waives any right to have the facts that the law

Type text here

Plea Agreement

2

Def. Initials _NZ_

1  makes essential to the punishment either charged in an Indictment,
2  proved to a jury, or proven beyond a reasonable doubt.

3    3.   In furtherance of this (or related) prosecution(s) involving
4  the Star Maia, Defendant shall:

5        (a)  truthfully and completely disclose all information with
6  respect to the activities of the company, its present and former
7  officers and employees, and others concerning all matters about which
8  the Government inquires of it;

9        (b)  cooperate fully with the Government and any other law
10 enforcement agency designated by the Government;

11       (c)  at the request of the Government, use its best efforts
12 promptly to secure the attendance and truthful statements or testimony
13 of any officers, agents, or employees at any meeting or interview,
14 before the grand jury, or at any trial or other court proceedings;

15       (d)  use its best efforts promptly to provide the Government,
16 upon request, any document, record, or other tangible evidence relating
17 to matters or conduct about which the Government or any designated law
18 enforcement agency inquires;

19       (e)  bring to the Government's attention all criminal conduct
20 by or criminal investigations of the company or any of its employees
21 (to include senior management) that come to the attention of the
22 company's senior management, as well as any administrative proceeding
23 or civil action, brought by any United States governmental authority
24 that alleges violations of U.S. law by Defendant;

25       (f)  file no motions, make no statements, nor take any
26 position whatsoever in relation to any motion that the Government may

27

28

1 file regarding a request or recommendation to the Court for an award to
2 be paid to any persons pursuant to 33 U.S.C. § 1908(a); and

3          (g) not retaliate against any crew member who cooperated
4 with the investigation and prosecution of this case, to include any
5 refusal of future employment of a crew member because of the crew
6 member's cooperation.

7     4.   Defendant agrees that this agreement will be executed by an
8 authorized representative.

9     5.   The parties have previously executed an Agreement on Security
10 which provides for, among other things, the maintenance of certain crew
11 members. This Agreement on Security remains in effect until final
12 disposition of this matter and related matters as to all signatories to
13 the Agreement on Security.

14    6.   The Government agrees to (1) defer any other charges based on
15 the same conduct, and (2) not prosecute Defendant thereafter on such
16 deferred charges unless Defendant breaches the plea agreement or the
17 guilty plea entered pursuant to this plea agreement is set aside for
18 any reason. If Defendant breaches this agreement or the guilty plea is
19 set aside, section XII below shall apply.

20                                 II

21                     **NATURE OF THE OFFENSE**

22    A.   ELEMENTS EXPLAINED

23    The offenses to which Defendant is pleading guilty have the
24 following elements:

25    1. The Motor Vessel ("MV") Star Maia was a vessel of 400 or more
26 gross tons that was registered in a country other than the United
27 States;

28

Plea Agreement                        4          Def. Initials _NL_

Type text here

2. With respect to the Oil Record Book:

    (a) ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD., Defendant corporation, acting through its agents and/or employees, who were acting within the scope of their agency and/or employment and at least in part for the benefit of the corporation, was also a person in charge of machinery space operations for which entries are required to be accurately recorded in the Oil Record Book;

    (b) On or about the date charged, when the MV Star Maia entered the navigable waters, internal waters, and ports of the United States, and while the vessel remained therein, agents and/or employees of the Defendant corporation, acting within the scope of their agency or employment and at least in part for the benefit of the corporation, failed to maintain an accurate Oil Record Book in which the transfers of oily bilge water and the discharges or disposal otherwise of oily bilge water were recorded as required by U.S. law; and

    (c) The Defendant, acting through its agents and/or employees, who were acting within the scope of their agency or employment and at least in part for the benefit of the Defendant corporation, acted knowingly.

3. With respect to the Garbage Record Book:

    (a) ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD., Defendant corporation, acting through its agents and/or employees, who were acting within the scope of their agency and/or employment and at least in part for the benefit of the corporation, was a person responsible for making full and complete entries in

1 the vessel's Garbage Record Book for any garbage discharge or

2 disposal operations;

3 (b) On or about the date charged, when the MV Star Maia

4 entered the navigable waters, internal waters, and ports of

5 the United States, and while the vessel remained therein,

6 agents and/or employees of the Defendant corporation, acting

7 within the scope of their agency or employment and at least

8 in part for the benefit of the corporation, failed to maintain

9 an accurate Garbage Record Book in which the incineration and

10 disposal of garbage were recorded as required by U.S. law;

11 and

12 (c) The Defendant, acting through its agents and/or

13 employees, who were acting within the scope of their agency

14 or employment and at least in part for the benefit of the

15 Defendant corporation, acted knowingly.

16

17 B. ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

18 Defendant has fully discussed the facts of this case with defense

19 counsel. Defendant has committed each element of the crimes and admits

20 that there is a factual basis for this guilty plea. Defendant admits

21 the following facts and agrees that they are not a complete recitation,

22 but merely an outline of what happened in relation to the charge to

23 which Defendant is pleading guilty. The following facts are true and

24 undisputed:

25 1. The Defendant. Defendant ZEABORN SHIP MANAGEMENT

26 (SINGAPORE) PTE. LTD. was a company incorporated in Singapore with

27 offices at 1 Maritime Square, #11-03 Harbour Front Centre,

28

Singapore 099253. At all relevant times, ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. served as the operator of the MV Star Maia.

2. <u>The Vessel</u>. The MV Star Maia (International Maritime Organization Number 9189940) was a 29,668 gross ton vessel, registered and operated under the flag state administration of Isle of Man. The MV Star Maia was engaged in international commercial maritime operations transporting cargo to and from San Diego, California, and elsewhere. The MV Star Maia had a Captain, also known as the vessel's "Master," who was the person in overall charge of the vessel. The Master was responsible for, among other things, the disposal of garbage from the vessel and overall management of the vessel's garbage waste management plan. In addition to the Master, the MV Star Maia had a "Chief Officer," a "Second Officer," and a "Third Officer," who assisted the Master. The MV Star Maia also had a "Chief Engineer" assigned as the person in charge of the vessel's engine room, as well as a "Second Engineer," a "Third Engineer," and several others who assisted Chief Engineer. These crew members working in the engine room were responsible for, among other things, shipboard control of machinery space waste, to include oily bilge water. In all, there were 20 crew members working onboard the MV Star Maia, and all were agents or employees of ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD., the corporate operator of the MV Star Maia, acting within the scope of their agency or employment with Defendant ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. when serving onboard the MV Star Maia.

3.   The Investigation. Prior to the MV Star Maia's arrival at the Port of San Diego, the U.S. Coast Guard received a report claiming that crewmembers in the engine room had discharged oily bilge water directly overboard into the ocean, and that garbage had been burned in barrels onboard the vessel.

4.   When the MV Star Maia arrived at the Port of San Diego on October 14, 2022, the U.S. Coast Guard conducted an inspection of the vessel. During the inspection, the U.S. Coast Guard obtained evidence establishing that several overboard discharges of oily bilge water had been conducted without using the required pollution prevention equipment, and that these discharges had not been recorded in the vessel's Oil Record Book as required by law. Additionally, the U.S. Coast Guard obtained evidence that on several occasions, garbage (including paper, plastics, and oily rags) had been burned in barrels on the deck of the vessel and these barrels had been subsequently thrown into the ocean. None of the garbage burning occurring on deck was recorded in the vessel's Garbage Record Book as required by law. Neither the burning of garbage on deck nor the disposal of barrels overboard at sea were recorded in the vessel's Garbage Record Book as required by law.

5.   When the Master came onboard the MV Star Maia on May 18, 2022, the vessel had recently completed maintenance in drydock, and he noticed an unusual accumulation of garbage. Rather than storing the garbage onboard until it could be offloaded to a reception facility or incinerating it in the vessel's incinerator, the Master instead directed the crew to burn certain garbage in barrels onboard the vessel. This garbage burning took place on at

least 3 or 4 occasions between June and August 2022. The type of garbage burned included paper, plastics, and oily rags. After the burning was complete, a crew member threw the barrels used to burn the garbage into the ocean.

6.   On or about August 26, 2022, the Master became aware that oily bilge water from the engine room had been discharged directly overboard and these discharges were not recorded in the vessel's Oil Record Book. Specifically, in preparation for the MV Star Maia's port call in San Diego, California, the Master instructed the vessel's Chief Engineer to follow a shipboard checklist to inspect the vessel's pollution prevention equipment, to include the Oil Water Separator and Oil Content Monitor (which keeps an electronic record of when the system is operated), and the vessel's Oil Record Book to ensure there were no discrepancies. This inspection revealed that the Oil Water Separator had not been used since May 2022, despite three entries in the Oil Record Book (June 17, 2022, July 9, 2022, and July 29, 2022) made by the crew claiming that the system had been used. In all, these three Oil Record Book entries falsely recorded a total of approximately 6,762 gallons of oily bilge water having been processed through the Oil Water Separator when this oily bilge water had in fact been discharged directly overboard into the ocean.

7.   The shipboard investigation performed by the Master before the vessel arrived in the U.S. determined that the Second Engineer had been bypassing the vessel's Oil Water Separator and discharging oily bilge water from the bilge water holding tank directly into the ocean by opening valve BL-15 and using the

general service pump. The Master reported this situation to a
shoreside Superintendent of Defendant. The Superintendent
immediately told the Master to fire the Second Engineer and remove
him from the vessel at the next scheduled port call in Panama which
was the port before the vessel reached San Diego. The
Superintendent also arranged for an auditor to meet the vessel in
Panama to assist the crew in preparing for the vessel's scheduled
arrival in San Diego and anticipated U.S. Coast Guard inspection.
This auditor was a third-party service provider appointed by
Defendant.

8.    On or about September 30, 2022, this third-party auditor
attended the MV Star Maia in Balboa, Panama, for a period of
approximately three days. The Master asked the auditor if entries
should be made to the Oil Record Book to correct the false entries
that had been previously made (claiming the Oil Water Separator
had been used when it had not). The auditor advised not to make
any corrections to the Oil Record Book because he thought the U.S.
Coast Guard would not be interested in the discrepancies and
instead advised that the discrepancies be reported to the company
as non-conformities in accordance with the company's internal
procedures. The Master also asked if the investigation report and
explanation of the termination of the Second Engineer should be
attached to the Oil Record Book to explain the discrepancies and
the auditor advised the Master not to include a letter or make any
corrective entries because the U.S. Coast Guard would not be
interested in discrepancies going back four months in time.

9. After the MV Star Maia departed Balboa, Panama, and was headed to San Diego, California, the Chief Engineer ordered a lower-ranking crew member to discharge oily bilge water from the Clean Bilge tank directly into the ocean using the general service pump, bypassing the Oil Water Separator. This lower-ranking crew member refused to follow this order, so the Chief Engineer directed a second lower-ranking crew member to do it. This second crew member initially refused, but the Chief Engineer told him that he (the Chief Engineer) would stand lookout on the deck of the vessel and would radio the crewmember to stop discharging if he saw any visible traces of oil discharge on the surface of the water. The crewmember reluctantly agreed, and approximately 3 cubic meters (approximately 792 gallons) of oily bilge water was then discharged directly into the ocean from the Clean Bilge Tank.

10. On or about October 14, 2022, when the MV Star Maia called at the Port of San Diego, California, Defendant, knowingly failed to maintain an accurate Garbage Record Book, in violation of 33 U.S.C. § 1908(a), as the above-mentioned burning of garbage in barrels was not recorded in the Garbage Record Book; and knowingly failed to maintain an accurate Oil Record Book, in violation of 33 U.S.C. § 1908(a), by maintaining an Oil Record Book that: (1) failed to record the discharges of oily bilge water from the Bilge Holding Tank and the Clean Bilge Tank into the ocean; and (2) erroneously recorded that oily bilge water had been discharged using the Oil Water Separator when in fact that equipment had not been used. All in violation of Title 33, United

States Code, Section 1908(a); and Title 33, Code of Federal
Regulations, Sections 151.25 and 151.55.

### III

### PENALTIES

The crimes to which Defendant is pleading guilty carry the
following penalties:

A.   a maximum period of five years of probation per count for an
organization;

B.   a fine which is the greater of $500,000 or twice the amount
of gross gain or loss per count;

C.   a mandatory special assessment of $400 per count; and

D.   an obligation to pay any applicable interest or penalties on
fines and restitution not paid at the time of sentencing.

### IV

### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A.   Continue to plead not guilty and require the Government to
prove the elements of the crime beyond a reasonable doubt;

B.   A speedy and public trial by jury;

C.   The assistance of counsel at all stages;

D.   Confront and cross-examine adverse witnesses; and

E.   Testify and present evidence and to have witnesses testify on
behalf of Defendant.

**V**

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutors in this case has or will be turned over to Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

**VI**

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.    Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable Government benefits. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation in another case; debarment from Government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B.    No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.    No one has threatened Defendant or Defendant's agents or employees to induce this guilty plea.

Plea Agreement                                    13                          Def. Initials _N2_

1    D.    Defendant is pleading guilty because Defendant is guilty and
      for no other reason.

2                                    **VII**

3                **AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE**
**SOUTHERN DISTRICT OF CALIFORNIA & ENVIRONMENT AND NATURAL RESOURCES**
4                                **DIVISION**

5          This plea agreement is limited to the United States Attorney's

6    Office for the Southern District of California and the Environment and

7    Natural Resources Division of the United States Department of Justice

8    and cannot bind any other authorities in any type of matter, although

9    the Government will bring this plea agreement to the attention of other

10   authorities if requested by Defendant.

11                                  **VIII**

12              **APPLICABILITY OF SENTENCING GUIDELINES**

13         This case is governed by the Sentencing Reform Act, as modified by

14   United States v. Booker, 543 U.S. 220 (2005), and the Federal Sentencing

15   Guidelines, except that the organizational fine calculations for

16   environmental offenses are not governed by USSG § 8C2.1.

17                                    **IX**

18              **SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

19         This plea agreement is made pursuant to Federal Rule of Criminal

20   Procedure 11(c)(1)(B). The sentence is within the sole discretion of

21   the sentencing judge who may impose the maximum sentence provided by

22   statute. It is uncertain at this time what Defendant's sentence will

23   be. The Government has not made and will not make any representation

24   about what sentence Defendant will receive. Any estimate of the probable

25   sentence by defense counsel is not a promise and is not binding on the

26   Court. Any recommendation by the Government at sentencing also is not

27   binding on the Court. If the sentencing judge does not follow any of

28

Plea Agreement                        14                 Def. Initials  *N2*

1   the parties' sentencing recommendations, Defendant will not withdraw
2   the guilty plea.

3                                  X

4   **PARTIES' SENTENCING RECOMMENDATIONS**

5       A.   SENTENCING GUIDELINE CALCULATIONS

6       As stated above, this case is governed by the Sentencing Reform
7   Act, as modified by United States v. Booker, 543 U.S. 220 (2005), and
8   the Federal Sentencing Guidelines, except that the organizational fine
9   calculations for environmental offenses are not governed by USSG §
10  8C2.1.

11      B.   NO FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING
         THOSE UNDER 18 U.S.C. § 3553
12

13      Defendant may not request or recommend additional downward
14  adjustments, departures, or variances from the Sentencing Guidelines
15  under 18 U.S.C. § 3553 unless requested by the Court.

16      C.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

17      The facts in section II.B of this agreement are true and may be
18  considered as "relevant conduct" under USSG § 1B1.3 and as the nature
19  and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

20      D.   SPECIAL ASSESSMENT/MONETARY PENALTY/RESTITUTION/FORFEITURE
21           1.   Special Assessment

22      The parties will jointly recommend that Defendant pay a special
23  assessment in the amount of $400.00 per felony count of conviction for
24  a total of $800.00, to be paid forthwith at time of sentencing. Special
25  assessments shall be paid through the office of the Clerk of the
26  District Court by bank or cashier's check or money order made payable
27  to "Clerk, United States District Court."

28

Plea Agreement                      15                  Def. Initials 

1          2.   Monetary Penalty

2      a. The parties will jointly recommend that Defendant pay a monetary

3  penalty of $2,000,000, consisting of a criminal fine of $1,500,000, and

4  a community service payment of $500,000. This community service payment

5  shall be designated as organizational community service pursuant to 18

6  U.S.C. § 3563(b)(12) and § 8B1.3 of the United States Sentencing

7  Guidelines and in furtherance of satisfying the sentencing principles

8  provided for under 18 U.S.C. § 3553(a). Within 30 days of sentencing,

9  Defendant shall make the community service payment of $500,000 to the

10 National Fish and Wildlife Foundation ("NFWF") as provided below.

11     b. NFWF is a nonprofit organization established by the United

12 States Congress pursuant to 16 U.S.C. §§ 3701-3710. Its purposes include

13 the acceptance and administration of "property . . . to further the

14 conservation and management of fish, wildlife, plants, and other natural

15 resources," and the performance of "such other activities as will

16 further the conservation and management of the fish, wildlife, and plant

17 resources of the United States, and its territories and possessions for

18 present and future generations of Americans." 16 U.S.C. § 3701(b)(1),

19 (2).

20     c. NFWF is specifically empowered by Congress to "receive and

21 administer restitution and community service payments, amounts for

22 mitigation of impacts to natural resources, and other amounts arising

23 from legal, regulatory, or administrative proceedings, subject to the

24 condition that the amounts are received or administered for purposes

25 that further the conservation and management of fish, wildlife, plants,

26 and other natural resources."  16 U.S.C. § 3703(c)(1)(K).

27

28

d. NFWF is also required by its charter to submit to Congress annually a report of its proceedings and activities during such year, including a full and complete statement of its receipts, expenditures, and investments. 16 U.S.C. § 3706(a), (b).

e. NFWF shall use the community service funds paid by Defendant to fund projects, activities, or initiatives intended to benefit marine and coastal natural resources located in or around the Tijuana River National Estuarine Research Reserve. The types of projects, activities, and initiatives to be considered for funding by NFWF should be focused on, but not necessarily limited to, those intended to: (1) conduct research related to the effects of pollution on the marine estuarine environment; (2) protect and restore estuarine natural resources and habitats impacted by current or historic pollution or other human-caused disturbance; (3) control invasive plants; (4) monitor, protect, and restore sensitive species; and/or (5) conduct sediment management for the benefit of marine and coastal ecosystems.

f. NFWF shall use best efforts to obligate the community service funds to appropriate projects, activities, and initiatives within three years of the date of entry of Judgment in this case. NFWF shall further report to the United States Probation Office for the Southern District of California and to the Environment and Natural Resources Division, on at least an annual basis, regarding the status and disposition of the community service funds it has received pursuant to this Section, until all such funds have been expended.

g. The Defendant shall remit the community service payment to NFWF by either certified check or electronic funds transfer. Certified checks should be delivered to the National Fish and Wildlife Foundation,

attention Chief Financial Officer, 1133 15th Street NW, Suite 1000, Washington DC, 20005, and should include a reference to the case number in this proceeding. Payments via electronic funds transfer should be made in accordance with written wiring instructions provided by NFWF through its Chief Financial Officer or Senior Vice President, Impact-Directed Environmental Accounts, at the time of transfer.

h. Defendant agrees and stipulates that the $2,000,000 monetary penalty amount is consistent with 18 U.S.C. § 3571 and that it has been properly calculated as representing twice the gain to defendant from the offense. Defendant recognizes and agrees that it will not seek to have payment of any monies pursuant to this plea agreement treated as a tax-deductible donation; nor will Defendant make any public statement classifying any payments as voluntary contributions; nor will Defendant seek to gain any benefit in other claims or litigation. The parties further agree that the entire $1,500,000 fine, $500,000 community service payment, and the $400 per-count special assessment shall be paid within 15 days of sentencing.

### 3.   Restitution

The parties are not aware of any identifiable victim of the offense for which restitution is appropriate, and jointly recommend that no restitution be ordered in this case.

### 4.   Forfeiture

Federal law states that Defendant must forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds obtained directly or indirectly from the offense. The parties are not aware of any property subject to forfeiture in this case, and jointly recommend that no property of the Defendant be forfeited.



E.   PROBATION

The parties agree and will recommend to the Court that Defendant serve a period of probation of 4 years from the date of execution of sentence. During the probationary period, Defendant agrees to fund and implement a comprehensive Environmental Compliance Plan (ECP), included as Attachment A to this plea agreement. Implementation of the ECP is a condition of probation. In the event the Court, in consultation with the United States Attorney's Office for the Southern District of California, the Environment and Natural Resources Division of the United States Department of Justice, the United States Probation Office, and Defendant, determines that Defendant has failed to either satisfactorily implement the ECP or has violated the terms of the ECP, the probationary term may be extended for a period to be determined by the Court.

F.   PRE-SENTENCE REPORT

The parties agree to recommend to the Court that the preparation of a Pre-Sentence Report be waived in this case, and that the matter be set for sentencing promptly following the plea, as the Court's schedule permits.

**XI**

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective

Plea Agreement                                 19                      Def. Initials _NZ_

1  assistance of counsel. If Defendant appeals, the Government may support
2  on appeal the sentence or restitution order actually imposed.

### XII

#### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

     1.    Failing to plead guilty pursuant to this agreement;

     2.    Failing to fully accept responsibility;

     3.    Failing to appear in court;

     4.    Attempting to withdraw the guilty plea;

     5.    Failing to abide by any court order related to this case;

     6.    Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement;

     7.    Engaging in additional criminal conduct from the time of signing this agreement until the time of sentencing.

     8.    Filing any motions, making any statements, or taking any position whatsoever in relation to any motion that the Government may file regarding a request or



recommendation to the Court for an award to be paid to
any persons pursuant to 33 U.S.C. § 1908(a).

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by representatives of Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charges that are the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should

1   be suppressed, cannot be used by the Government, or are inadmissible
2   under the United States Constitution, any statute, Rule 410 of the
3   Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
4   Procedure, and any other federal rule.

5   **XIII**

6   **CONTENTS AND MODIFICATION OF AGREEMENT**

7      This plea agreement embodies the entire agreement between the
8   parties and supersedes any other agreement, written or oral. No
9   modification of this plea agreement shall be effective unless in writing
10  signed by all parties.

11  **XIV**

12  **DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

13     By signing this agreement, Defendant certifies that Defendant and
14  all relevant members of the defendant organization have read it.
15  Defendant and all of the relevant members of the defendant organization
16  have discussed the terms of this agreement with defense counsel and
17  fully understand its meaning and effect.

18  **XV**

19  **DEFENDANT SATISFIED WITH COUNSEL**

20     The members of the defendant organization have consulted with
21  counsel and are satisfied with counsel's representation. This is
22  Defendant's independent opinion, and Defendant's counsel did not advise
23  Defendant about what to say in this regard.

24  //

25  //

26  //

27  //

28

Plea Agreement         22         Def. Initials _N2_

1

2

3  DATED _July 24, 2023_

RANDY S. GROSSMAN
United States Attorney


MELANIE K. PIERSON
Assistant U.S. Attorney

4

5

6

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

7

8  DATED _July 24, 2023_

STEPHEN DA PONTE
Senior Trial Attorney

9

10  DATED _24 July 2023_

11

JOSEPH A. WALSH II
Defense Counsel

12

13  **IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER
PENALTY OF PERJURY THAT THE FACTS IN SECTION II.B ABOVE ARE TRUE.**

14  _24 July 2023_

15  DATED

16

For Defendant
ZEABORN SHIP MANAGEMENT
(SINGAPORE) PTE. LTD.

17

18

19

20

21

22

23

24

25

26

27

28

Plea Agreement

23

Def. Initials _NZ_